**EL PASO COUNTY HOSPITAL DISTRICT d/b/a R.E. Thomason General Hospital, et al., Petitioners**

v.

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION and Thomas Suehs, Executive Commissioner, Respondents.**

No. 11–0830.

Supreme Court of Texas.

Argued Feb. 6, 2013.

Decided May 17, 2013.

James E. Gjerset, Lance James Ramsey, Shauna L. Lorenz, Gjerset & Lorenz, LLP, Austin, TX, Julie Plantes Woody, Marie R. Yeates, Michael A. Heidler, Vinson & Elkins, L.L.P., Houston, TX, for Petitioner El Paso County Hospital District.

Daniel T. Hodge, First Asst. Attorney General, David C. Mattax, Director of Defense Litigation, Office of the Attorney General, Eugene A. Clayborn, Assistant Attorney General, Environmental Protection & Admin Law, Greg W. Abbott, Attorney General of Texas, Jonathan F. Mitchell, Solicitor General, Office of the Attorney General, Rance L. Craft, Office of the Attorney General, Austin TX, for Respondent, Texas health & Human Services Comm'n.

Justice DEVINE delivered the opinion of the Court.

This appeal raises two questions about an earlier appeal and opinion from this Court. *See El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n,* 247 S.W.3d 709 (Tex.2008). The earlier appeal concerned a suit by fourteen Texas hospitals against the Texas Health and Human Services Commission and its Executive Commissioner (collectively "HHSC"), which challenged a "cutoff date" used by HHSC to cap the collection of data used to calculate Medicaid reimbursement rates for inpatient services. In that suit, the hospitals asserted two claims for declaratory relief under section 2001.038 of the Administrative Procedure Act ("APA"). *Id.* at 711. First, they claimed that the cutoff date was an invalid "rule" because it was not adopted via the APA's formal rulemaking procedures. Second, they argued that the part of the agency's appeal rule, which HHSC applied to deny them administrative relief from the cutoff date's effect on their rates, was inapplicable. This Court agreed that the cutoff date was an invalid rule and that, as a result, the appeal rule, as interpreted by HHSC to deny the hospitals' administrative appeals, did not apply. *Id.* We declared the cutoff-date rule invalid and enjoined its enforcement. *Id.* at 715–16.

We further remanded the cause to the district court where the hospitals argued that our judgment, enjoining the enforcement of the cutoff-date rule, should apply retroactively to provide them a basis to reopen their earlier administrative appeals and to seek reimbursement for the underpayment of past Medicaid claims calculated under the invalid cutoff-date rule. HHSC responded that the injunction should only operate prospectively because the earlier administrative proceedings were concluded before the Court's injunction and could not be reopened under agency rules. The district court agreed with the hospitals; the court of appeals agreed with HHSC. The court of appeals reversed the district court's judgment, in part, concluding that our 2008 opinion and judgment did not purport to reopen past rate determinations or closed administra-

tive proceedings. 351 S.W.3d 460, 488 (Tex.App.–Austin 2011). We agree and affirm the court of appeals' judgment.

## I

When a Texas hospital provides inpatient services to a Medicaid beneficiary, HHSC reimburses the hospital with Medicaid funds. 1 Tex. Admin. Code § 355.8063 (2004) (Tex. Health & Human Servs. Comm'n, Reimbursement Methodology for Inpatient Hospital Services) (hereinafter, "Former Rule § 355.8063").[1] Since 1986, HHSC (or its predecessor) has determined the amount of reimbursement through a "prospective payment system." Id. § 355.8063(a); 11 Tex. Reg. 2988 (1986). Under this system, HHSC calculates the payment rates in advance and then uses those rates to pay reimbursement claims submitted over the next several years, until the rates are recalculated. This rate-calculation process is tied to the state fiscal year ("FY"), which runs from September 1 through August 31. See Tex. Gov't Code § 316.071; see also El Paso Hosp. Dist., 247 S.W.3d at 713. The process provides for these rates to be recalculated or rebased every three years. Former Rule § 355.8063(a), (b)(5), (h).

According to HHSC, the rate-calculation process has historically taken around ten months to complete. As part of this process, HHSC first collects two sets of data from a prior fiscal year (the "base year"): (1) data from reimbursement claims submitted by all Texas hospitals for treating Medicaid patients admitted in that year, and (2) data from the reported costs of treating those patients. Id. § 355.8063(b)(5). HHSC then inputs that data in a formula that yields each hospital's "standard dollar amount" ("SDA"),

which approximates that hospital's average cost for treating an average Medicaid case in the base year. Id. § 355.8063(a), (b)(4), (c). All hospitals are then sorted into "payment divisions," each of which is a group of hospitals whose individual SDAs fall within a certain range of each other. Id. § 355.8063(a). For each payment division, HHSC computes a weighted average of the individual SDAs of that division's hospitals, and that weighted average is the reimbursement rate for all hospitals in that division. Id. § 355.8063(b)(4), (c). Reimbursement for a particular service is determined by multiplying this weighted average reimbursement rate by a "relative weight," which reflects the complexity of the services. Id. § 355.8063(b), (c).

Before the rates become final, a hospital may seek to correct alleged errors in its individual SDA calculation via an administrative-appeal procedure. Id. § 355.8063(k). But an appeal cannot challenge the rate-calculation methodology itself. Id. § 355.8063(k)(2). If HHSC grants an appeal, it adjusts the hospital's SDA for the next fiscal year. Id. § 355.8063(k)(1)(A). In addition, if correcting an error at any time (not just in an appeal) changes a hospital's payment division—and thus, its rate—HHSC reprocesses the hospital's reimbursement claims that were paid with the wrong rate during the current fiscal year and pays them according to the corrected rate. Id. § 355.8063(c). But "[n]o corrections are made to payment rates for services provided in previous state fiscal years." Id.

When HHSC began using this prospective-payment system in 1986, it applied a cutoff date to end the data-collection stage in a rate recalculation. HHSC decided to

---

1. The rule has since changed and its provisions moved to other sections, but this is the version relevant to this appeal.

cutoff the collection of claims data six months after the end of the base year (on February 28) to assure time for it to have the new rates in place by the start of the next fiscal year (beginning September 1). As a result, data from three to five percent of paid claims from the relevant base year were typically left out of a rate recalculation. HHSC imposed this cutoff date without adopting it as a rule under the APA's rule-making procedures. *El Paso Hosp. Dist.*, 247 S.W.3d at 711.

In 2001, fourteen Texas hospitals[2] challenged HHSC's use of the cutoff date. They theorized that the cutoff date excluded data from their rate recalculations that, if included, would increase their rates.[3] To assert their challenge, the hospitals filed administrative appeals during the 2000–2001 rate recalculation, claiming that the cutoff date caused "data entry" errors. HHSC denied the appeals at the informal stage, ruling that the hospitals were not raising true data entry errors, which are appealable, but instead were contesting the rate-calculation methodology, which is not. Former Rule § 355.8063(k)(2). HHSC further denied the hospitals' requests to refer them to the next appeal step—formal administrative hearings. At the time there was no provision for judicial review of the denial decisions. *See* 351 S.W.3d at 466. In September 2001, the

new rates went into effect for FY 2002. *El Paso Hosp. Dist.*, 247 S.W.3d at 713.

In August 2002, the hospitals sued HHSC under section 2001.038 of the APA for declaratory and injunctive relief regarding two agency rules. First, they claimed the cutoff date was a "rule" under the APA and was thus invalid because it had not been adopted under the APA's procedures. Second, they claimed that the rule that barred administrative appeals challenging the rate methodology did not apply to their appeals challenging HHSC's use of the cutoff date. After a bench trial, the district court rendered judgment that the hospitals take nothing, and the court of appeals affirmed the judgment. *El Paso Hosp. Dist.*, 161 S.W.3d at 587–88 (Tex. App.–Austin 2005). That decision was appealed to this Court. We granted review and issued two opinions.

Initially, we affirmed the court of appeals' judgment in part and reversed it in part. *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 50 Tex. Sup.Ct. J. 1143 (Aug. 31, 2007), *withdrawn on motion for rehearing*, 247 S.W.3d at 711. We held the cutoff date was invalid because it was a rule that had not been adopted under the APA. We did not, however, immediately invalidate the cutoff

---

**2.** The fourteen plaintiff-hospitals included: El Paso County Hospital District d/b/a R.E. Thomason General Hospital, Conroe Hospital Corporation d/b/a Conroe Regional Medical Center; Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center; Sunbelt Regional Medical Center, Inc. d/b/a East Houston Regional Center; Brownsville–Valley Regional Medical Center d/b/a Valley Regional Medical Center; Columbia/St. David's Healthcare System, L.P. d/b/a North Austin Medical Center; El Paso Healthcare System, Ltd. d/b/a Las Palmas Medical Center and Del Sol Medical Center; HCA Health Services of Texas, Inc. d/b/a Rio Grande Regional Hospital; Methodist Healthcare System of San Antonio, Ltd. d/b/a Methodist Specialty & Trans-

plant Hospital, Northeast Methodist Hospital, and Southwest Texas Methodist Hospital; and St. David's Medical Center and Round Rock Medical Center

**3.** The theory ultimately proved true for five of the hospitals. The cutoff date, however, did not affect the rates of eight of the hospitals and adding the excluded data actually decreased the rate for one of the hospitals. *See* 351 S.W.3d at 472 & n. 15. Ironically, the hospital that benefitted under the cutoff date was the El Paso County Hospital District, the lead plaintiff in the lawsuit and subsequent appeals.

date. We concluded instead that the cutoff should be left in place for a reasonable time, as per APA section 2001.040, while HHSC formally adopted it. *See* Tex. Gov't Code § 2001.040. We also concluded that HHSC properly denied the hospitals' administrative appeals.

On rehearing, the hospitals complained about our reliance on APA section 2001.040. That section, the hospitals argued, did not apply because it was enacted several years after HHSC began using the cutoff date to limit its data collection. The hospitals further argued that the relevant statute at the time stated simply that a rule was "not valid" if it were not adopted under the APA. *See* Act of Sept. 1, 1999, 76th Leg., R.S., ch. 558, § 3, 1999 Tex. Gen. Laws 3089, 3090, *codified as amended*, Tex. Gov't Code § 2001.035. This statute, unlike APA section 2001.040, did not make provision for the agency to bring its rule into compliance. *Cf.* Tex. Gov't Code § 2001.040. The hospitals also maintained that declaring the cutoff date "void" would "pave the way" for them "to seek retroactive adjustment of their reimbursement rates," which would result in adjustments to their reimbursements over the past six years based on those rates. That relief was needed, according to the hospitals, because HHSC had not rebased during the intervening years but had instead continued to use the 2001 rate calculations with the cutoff date.

The hospitals also asked the Court to reconsider its declaration that HHSC properly applied its rules to deny the hospitals' administrative appeals. Those appeals, the hospitals added, would be the appropriate forum for recalculation of their reimbursement rates, including any retroactive adjustments for prior years.

HHSC, for its part, agreed that APA section 2001.040 did not apply and that, under the prior statute, the Court should declare the cutoff-date rule "invalid" immediately. HHSC also conceded that it continued to use the 2001 rate calculations because the Legislature had not funded the rebasing process. HHSC disputed, however, that the Court could grant, or that the hospitals could obtain, retroactive adjustment of their rates and reimbursements for prior years. HHSC further pointed out that the retroactivity issue was not relevant in any event because the hospitals were not seeking monetary reimbursement for past years in the case. In reply, the hospitals agreed that the issue of retroactive relief was not before the Court and was "properly reserved until such time as the Hospitals actually seek retroactive relief in a future proceeding." [4]

We granted the hospitals' motion for rehearing and issued a new opinion, removing the erroneous reliance on section 2001.040. *El Paso Hosp. Dist.*, 247 S.W.3d at 711–16. As before, the Court declared the cutoff-date rule invalid, but we now rendered judgment "enjoining its enforcement." *Id.* at 714–15. Because the rule was not a valid part of the rate methodology, the Court also declared that the hospitals' administrative appeals challenged appealable data entry errors, thereby entitling them to "a review of individual claims data excluded by the ... cutoff." *Id.* at 716. Retroactive relief for previous years was not mentioned, and the case was remanded to the district court for further proceedings.

The parties thereafter joined issue both in the district court and before the agency as to the implications of our judgment, particularly regarding reimbursement rates and payments from earlier years. In the district court, the hospitals filed a mo-

---

4. *See infra* note 6.

tion for entry of judgment that sought, in part, to explicitly require HHSC to recalculate the applicable reimbursement rates dating back to FY 2002. At the hospitals' urging, the district court signed a new judgment on March 9, 2009, enjoining HHSC from applying the cutoff date to the data used to calculate the hospitals' reimbursement rates for state fiscal years 2002 through 2009, and until such time as it lawfully implements a new rate.[5] The district court's judgment also provided that the hospitals were entitled to administrative appeals seeking recalculation of their rates under HHSC's rules. HHSC appealed. It complained that the district court's judgment granted more relief than our judgment to the extent the district court enjoined the agency from applying the cutoff date to calculate the hospitals' reimbursement rates for years predating this Court's mandate, that is, from FY 2002 through April 2008.

While HHSC pursued its appeal in the courts, the hospitals proceeded with their administrative appeals. Although the scope of these appeals remained at issue in the court of appeals, HHSC nevertheless commenced recalculating the hospitals' rates without the cutoff date. In HHSC's view, this work had to be done in any event because it believed that the district court's judgment tracked the relief granted in this Court, at least in part.

By letter dated March 24, 2009, the hospitals renewed their appeal-hearing requests, and their appeals were consolidated and set before an Administrative Law Judge (ALJ). By November 2009, HHSC had substantially completed recalculating the hospitals' rates without the cutoff date. As a result of this work, the rates for five of the fourteen hospitals increased, while the rates of the other hospitals did not change or decreased.

The ALJ held a hearing and issued her order in June 2010. The ALJ held that, under agency rules, HHSC could apply the increased rates to reimbursement claims from the five affected hospitals for the current fiscal year (2010) and going forward. The ALJ, however, excluded the hospitals' evidence on how the recalculation would affect their rates and reimbursements for FY 2002–2009 as irrelevant because agency rules did not authorize corrections to reimbursements for previous fiscal years.

The hospitals filed suit for review of the ALJ's order. That appeal remains pending in district court. *CHCA Conroe, L.P. v. Tex. Health & Human Servs. Comm'n*, No. D-1-GN-10-002350 (353rd Dist. Ct., Travis Cnty., Tex. July 8, 2010).

Meanwhile, the court of appeals continued its review of HHSC's appeal, which complained about the retrospective aspect of the district court's injunction and judgment. The problem with the judgment, HHSC explained, was that it enjoined the agency from doing something it had already done. The hospitals maintained that the district court's judgment, and this Court's judgment for that matter, required HHSC to reprocess the hospitals' reimbursement claims from past years using rates computed without the cutoff date

5. By this time HHSC had adopted a new rule that included the cutoff date. 1 Tex. Admin. Code § 355.8052(c)(4)(B) (2008). That rule was to apply to a new recalculation of all Texas hospitals' rates that the Legislature had ordered for FY 2009. General Appropriations Act, 80th Leg., R.S., ch. 1428, art. II, § 57(c), 2007 Tex. Gen. Laws 4913, 5130; 33 Tex. Reg. 6362 (2008). Funding the recalculation, however, was dependent on the federal government approving a Medicaid reform waiver authorized by the Legislature. 33 Tex. Reg. 10311 (2008). The reform waiver ultimately was not approved, and so the contingent rate recalculation for FY 2009 was not funded or implemented.

and, if the rates were higher, to pay the hospitals the difference above what they were already paid. That retroactive remedy, HHSC argued, exceeded the scope of this Court's previous declaratory judgment and was barred by both sovereign immunity and agency rules.

The court of appeals generally agreed. It reversed and vacated the district court's judgment to the extent it enjoined HHSC from applying the cutoff date for FY 2002–2007, but otherwise affirmed the judgment. 351 S.W.3d at 489. From that judgment, the hospitals appealed, complaining that the court of appeals erred in construing our 2008 judgment to grant only prospective relief. We granted the hospitals' petition for review to consider the scope of our prior judgment.

## II

The hospitals contend that by declaring the cutoff-date rule invalid and enjoining its enforcement, we authorized them to seek retroactive adjustments for past fiscal years. HHSC responds that our opinion and judgment did no such thing. It submits that injunctions ordinarily operate prospectively unless the issuing court indicates otherwise and that we did not indicate otherwise. Moreover, HHSC argues that our injunction became enforceable by the district court only upon issuance of the Court's April 2008 mandate; consequently, HHSC concludes that the district court's injunction likewise should operate prospectively from the date of our mandate.

The hospitals' theory, however, is that our declaration of the cutoff date's invalidity effectively reopened past administrative proceedings, thereby establishing their right to seek reimbursement for past fiscal years. But the hospitals did not seek to establish that theory in this Court. In fact, they submitted that the Court should not address the issue.[6] And, although we concluded that, without the cutoff-date rule, the hospitals' complaints about omitted claims data would not be precluded by agency rule prohibiting a formal contest of HHSC's prospective payment methodology, we did not consider any retrospective implications. *El Paso Hosp. Dist.*, 247 S.W.3d at 715. We merely reasoned that the data omitted under the invalid cutoff would instead be in the nature of a "mechanical, mathematical, or data entry error" for which a formal appeal could be taken under agency rule. *Id.* at 716. Contrary to the hospitals' assertion, we did not decide that the hospitals could retroactively seek reimbursement for past fiscal years. That issue was instead joined in the district court and in the agency proceedings that followed our judgment.

The court of appeals similarly concludes that our invalidation of the cutoff date did not require HHSC to reprocess the hospitals' reimbursements for FY 2002–2007.

---

6. The hospitals' Reply to Response to Motion for Rehearing under the title, "The Parties Agree That the Issue of Retroactive Relief is Not Before This Court and Should Not Be Addressed By This Court," stated:

> In their Motion for Rehearing, the Hospitals asked the Court to render the same judgment that the Hospitals requested in their Petition for Review and Brief on the Merits, i.e., that the February 28 cutoff de declared "void and invalid" and that HHSC be "permanently enjoin[ed]" from enforcing it. Petitioners' Motion for Rehearing at

12. To emphasize the importance of obtaining this relief, the Hospitals presented authority demonstrating that a judgment declaring the February 28 cutoff void would create an avenue for the Hospitals to seek retroactive relief in a future administrative or court proceeding. *Id.* at 9. Notably, however, the Hospitals did *not* ask the Court to decide the retroactivity issue. *Id.* at 12. That issue is properly reserved until such time as the Hospitals actually seek retroactive relief in a future proceeding.

351 S.W.3d at 477–88. Moreover, the court notes that HHSC's rules prohibit the use of adjusted rates to correct past payments—that is, payments made in fiscal years before the adjustment occurred. *Id.* at 484–85. But the court reasons that the same rules might require correction of the hospitals' payments from FY 2008 (when this Court's mandate issued) forward. *Id.* at 484–86.

These rules, referred to herein as Former Rule § 355.8063, governed how the agency set and adjusted Medicaid reimbursement rates for hospitals during the time relevant to this appeal.[7] Although there were other components to the rates HHSC set under Former Rule § 355.8063, the one important to this appeal was a standard dollar amount (SDA) assigned to each hospital, an approximation of the hospital's costs for an average or "standard" Medicaid case. *See id.* § 355.8063(a), (b)(4), (c).

Under Former Rule § 355.8063, HHSC was to recalculate or "rebase" SDAs and reimbursement rates every three years. *See id.* § 355.8063(h), (i). This rebasing process correspondingly ran on a three-year cycle that was tied to the state fiscal year, which, as noted earlier, runs from September 1 through August 31. *See El Paso Hosp. Dist.*, 247 S.W.3d at 713. The first year of the three-year cycle was designated as the "base year," a "12–consecutive month period of claims data selected by [HHSC] or its designee. . . ." Former Rule § 355.8063(b)(5); *see also El Paso Hosp. Dist.*, 247 S.W.3d at 712. Following the end of the base year (FY 1), HHSC would, during the second year (FY 2), compile cost data from Medicaid claims arising from hospital admissions made during FY 1 and, based on this data, determine new SDAs, reimbursement rates, and relative weights. *See* Former Rule § 35

5.8063(n); *El Paso Hosp. Dist.*, 247 S.W.3d at 712. These new rates would then take effect at the beginning of the third year (September 1 of FY 3) and remain effective for another three-year period, during which the same rebasing process was to be repeated. *See* Former Rule § 355.8063(n); *El Paso Hosp. Dist.*, 247 S.W.3d at 712. In the interim between rebasings, HHSC was to make annual cost-of-living adjustments to the rates. *See* Former Rule § 355.8063(n)(2).

Before the rates became final, Former Rule § 355.8063 provided hospitals an administrative appeal process through which they could challenge perceived "mechanical, mathematical, and data entry errors in computing the hospital's base year claims data" and obtain adjustments before the new rates became effective. *See id.* § 355.8063(k). The rule, however, explicitly barred such appeals with respect to "the prospective payment methodology used by HHSC," including "the payment division methodologies[.]" *Id.* § 355.8063(k)(2). Under this administrative appeal process or appeal rule, a hospital claiming that HHSC made "a mechanical, mathematical, and data entry error in computing the hospital's base year claims data" could submit to HHSC, within sixty days after the hospital received initial notification of its SDA and payment division (which would occur during the second year of the three-year rebasing process), "a specific written request for review and appropriate specific documentation supporting its contention that there has been [such] error. . . ." *Id.* § 355.8063(k)(1)(A). HHSC then had to "conduct the review as quickly as possible and notify the hospital of the results." *Id.; see also El Paso Hosp. Dist.*, 247 S.W.3d at 715 (observing that HHSC termed this procedure an "informal

---

7.  *See supra* note 1.

review"). "If the hospital [was] dissatisfied with the results of the review," the appeal rule further provided, "the hospital [could] request a formal hearing" before the State Office of Administrative Hearings (SOAH) under the contested-case procedures of the APA. Former Rule § 355.8063(k)(1)(A); *see also El Paso Hosp. Dist.*, 247 S.W.3d at 715.

The appeal rule further provided that if the "review or appeal" ultimately determined that an adjustment to the hospital's SDA or payment division was warranted, the timing of that adjustment would depend on when that review or appeal was completed:

> [I]f the review or appeal is completed at least 60 days before the beginning of the next prospective year, any adjustment required after completion of the review or appeal is applied to that next prospective year. If the review or appeal is not completed at least 60 days before the beginning of the next prospective year, any adjustment required after the completion of the review or appeal is applied only to the subsequent prospective year. The base year claims data used by [HHSC] pending the review or appeal is the base year claims data established by [HHSC] or is designee.

Former Rule § 355.8063(k)(1)(A). In context, "the beginning of the next prospective year" referred to September 1, the first day of the ensuing state fiscal year. The sixtieth day prior to that date is July 3. Thus, the appeal rule contemplated that if the review or appeal had not concluded by July 3 of the second year of the three-year rebasing cycle, the new SDAs and reimbursement rates—although derived from disputed data—would nonetheless take effect on the following September 1, as scheduled, pending the outcome of the review or appeal. If the review or appeal later determined that adjustments were required, those adjustments would be "applied only to the subsequent prospective year." *Id.*

In addition to the rule's appeal provision, Former Rule § 355.8063 also provided for retrospective correction of certain errors in reimbursement rates that had already been implemented. And, within certain limitations, it allowed for reconciliation of paid reimbursement amounts with the amounts to which the hospital would be entitled under the rates as corrected. This error-correction rule provided:

> When [HHSC] or its designee determines that [it] has made an error that, if corrected, would result in the [SDA] of the provider for which the error was made changing to a new payment division, either higher or lower, [HHSC] or its designee moves the provider into the correct payment division, and ... reprocesses claims paid using the initial, incorrect [SDA] that was in effect before the current state fiscal year by using the existing [SDA] in which the provider was moved.

*Id.* § 355.8063(c). The error-correction rule, however, emphasized that "[t]he correction of this error condition only applies to the current state fiscal year payments," and "[n]o corrections are made to payment rates for services provided in previous state fiscal years." *Id.*

As HHSC argues and the court of appeals found, Former Rule § 355.8063's appeal and error-correction provisions applied to the hospitals' administrative appeals. Under the appeal rule, again, any "adjustment" to reimbursement rates resulting from recalculation of the FY 2000 base-year data was to apply either to (1) "the next prospective year," if the "review or appeal is completed at least 60 days before the beginning of the next prospective year," or else (2) "only to the subsequent prospective year." Former Rule

§ 355.8063(k)(1)(A). As for the error-correction rule, while HHSC would be required to "move[ ] the provider into the correct payment division, and ... reprocess[ ] claims" using the correct reimbursement rate if it determines there has been an error impacting a hospital's rates, "[t]he correction of this error condition only applies to the current state fiscal year payments," and "[n]o corrections are made to payment rates for services provided in previous state fiscal years." *Id.* § 355.8063(c).

In light of these limitations on the remedies available under Former Rule § 355.8063, the court of appeals observed that whether the hospitals could obtain adjustments to Medicaid payments dating back to FY 2002 would ultimately turn on the interpretation of the terms "next prospective year" and "current state fiscal year"; that is, whether the relevant year to which these terms refer is determined by the time the dispute began or by the time the adjustment is actually determined. This rule-application question, the court of appeals recognized, was for it to decide, as it was not an issue this Court considered in the previous appeal. *See El Paso Hosp. Dist.,* 247 S.W.3d at 713–16.

■ The court then looked to the agency's interpretation of "next prospective year" and "current state fiscal year," noting the guiding principle of deference to an agency's interpretation of its own rules unless plainly erroneous or inconsistent with the rule's text. 351 S.W.3d at 485 (citing *Public Util. Comm'n v. Gulf States Utils. Co.,* 809 S.W.2d 201, 207 (Tex.1991)). Under the agency's interpretation, the terms refer to the time at which the rate or payment adjustments are made rather than the time at which the proceeding or dispute originated. The court of appeals concluded

that construing "next prospective year" to mean the year beginning immediately after the present point in time, not some earlier one, and "current state fiscal year" to mean the year that includes the present point in time, not some earlier one, [was neither] plainly erroneous or inconsistent with the ordinary meaning of these words and phrases.

*Id.* This led the court to conclude that the data entry errors excluded by the February 28 cutoff, as contemplated by our previous judgment, "did not provide the Hospitals a remedy with respect to the reimbursement rates applicable during FY 2002 through 2007, due to the limitations of Former Rule § 355.8063." *Id.* We agree that our prior opinion and judgment did not create a remedy for the hospitals' past reimbursement claims. Moreover, the hospitals do not challenge these rules or the court of appeals' reliance thereon except to the extent they view our procedural invalidation of the cutoff rule as superseding the effect of these duly adopted agency rules.

### III

Apart from the assumed retroactive effect of our prior declaratory judgment, the hospitals contend that our injunction required HHSC immediately to commence recalculating rates without the cutoff date and to make adjustments for the affected hospitals prospectively, that is, for FY 2008 and forward. Their assumption is that our judgement "enjoining [the cutoff-date rule's] enforcement" not only prevented HHSC from applying the rule when it gathered data to recalculate the hospitals' reimbursement rates, but also affirmatively required that recalculation itself. They argue, then, that whenever HHSC paid an individual reimbursement claim, it was enforcing the cutoff date because the rate it applied to pay that claim was based on the 2001 calculations that used data collected

under the cutoff-date rule. The hospitals therefore assert that HHSC is in contempt of our injunction because it has not reimbursed the five hospitals affected by the invalid cutoff-date rule for FY 2008 and FY 2009.

The court of appeals concluded that HHSC was not in contempt of our injunction. 351 S.W.3d at 488 (noting that the agency "had already agreed to recalculate the applicable reimbursement rates in accordance with the supreme court's judgment"). The court also concluded that our opinion, which declared that the agency's appeal rule did not prohibit the "review of individual claims data excluded by the February 28 cutoff," *El Paso Dist. Hosp.*, 247 S.W.3d at 716, "provide[d] the Hospitals a remedy with respect to rates in FY 2008 forward by virtue of the error-correction rule." 351 S.W.3d at 485. But apart from holding the hospital's contempt claims moot, the court expressed no opinion whether the hospitals possessed any other remedy with respect to FY 2008 or FY 2009. *Id.* at 489.

HHSC similarly maintains that it has complied with our previous judgment "enjoining the [cutoff-date rule's] enforcement." *El Paso Hosp. Dist.*, 247 S.W.3d at 715. Because the cutoff-date rule is, as this Court described, a "data collection method," *id.* at 711, HHSC submits that it "enforces" the rule when it collects data to be used in a rate calculation. The Court's injunction thus prevented HHSC from applying the cutoff date when collecting the data for the administrative appeals that the Court held the hospitals were entitled

to under agency rules. *Id.* at 716. HHSC asserts that the Court's injunction did not require it to immediately recalculate the hospitals' reimbursement rates but rather required that it recalculate the hospitals' rates in future administrative proceedings without using the cutoff date.[8]

■ HHSC further argues that the hospitals' interpretation of the injunction as requiring the immediate recalculation of the hospitals' rates is unreasonable because it renders the Court's opinion and judgment about the administrative appeals meaningless. In other words, if our injunction, of its own accord, required HHSC to recalculate the hospitals' rates immediately, there was no reason for the Court to hold that the hospitals were entitled to proceed with administrative appeals, where their claims data could be reviewed, and their rates recalculated, in that process. See *El Paso Hosp. Dist.*, 247 S.W.3d at 716. We agree.

\*      \*      \*

In the previous appeal, we declared the agency's cutoff date for the collection of Medicaid data invalid because it was a "rule" under the APA that had not been properly adopted, and we enjoined the agency from continuing to use it. *Id.* at 715. We further concluded that the cutoff-date rule could not be used to deny the hospitals a right to appeal under agency rule that allowed an appeal for data entry errors—but not for methodology complaints—because the hospitals were entitled to a formal review with respect to individual claims data excluded by the in-

---

8. HHSC submits that the Court's injunction further prevented it from using the cutoff date when it gathered data to compute all Texas hospitals' rates in the recalculation initially planned and funded by the Legislature for FY 2009. To comply, HHSC promulgating the cutoff date in a formal rule to cure the defect that prompted the injunction. Although the

FY 2009 recalculation ultimately was not funded or implemented, HHSC submits that it again complied with the Court's injunction by promulgating the cutoff date in the rules that governed the statewide recalculations implemented in FY 2011 and FY 2012. 1 Tex. Admin. Code § 355.8052(c)(4)(B) (2010); 1 Tex Admin. Code § 355.8052(c)(5)(B) (2011).

valid cutoff rule. *Id.* at 716. We did not decide whether the hospitals could reopen past agency proceedings or obtain relief for past years. Nor did we expressly order the agency to recalculate these hospitals' rates, although that relief was available to the hospitals under the agency's error-correction rules. We accordingly agree with the court of appeals' interpretation and application of our judgment in the previous appeal, and its judgment is therefore affirmed.

Justice BOYD did not participate in the decision.