NO. 07-10-0061-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 4, 2012

_____


DALE BRAMLETT, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF VICKI BRAMLETT, DECEASED;
SHANE FULLER AND MICHAEL FULLER, APPELLANTS

V.

BENNY P. PHILLIPS, M.D., APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-522,183; HONORABLE WILLIAM C. SOWDER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


**OPINION**


This appeal is from the trial court's entry of a judgment on remand from the Texas Supreme Court. Finding the trial court erred in the calculation of damages and the award of postjudgment interest, we reverse and remand.

**Background**

Because the underlying facts of this case are well-known to the parties, we focus only on those facts germane to this appeal. This medical malpractice cause of action was originally tried to a jury in 2005. That jury returned a verdict in favor of Appellants, Dale Bramlett, Individually and as Independent Administrator of the Estate of Vicki Bramlett, Deceased, Shane Fuller and Michael Fuller,[1] and against Appellee, Benny P. Phillips, M.D., awarding $11 million in actual damages and $3 million in exemplary damages. The trial court denied Appellee's request to apply the statutory cap on damages in a medical malpractice action provided by article 4590i, section 11.02(a),[2] and after post-trial adjustments,[3] entered a judgment in favor of Appellants in the sum of $12,168,364.50 on October 18, 2005 (the "2005 judgment"). That judgment provided for postjudgment interest at the rate of 6.50% from the date of judgment. *See* Tex. Fin. Code Ann. § 304.003 (West 2006). The 2005 judgment was appealed to this Court

---

[1]Where necessary to the discussion, Dale Bramlett, the Estate of Vicki Bramlett, Shane Fuller and Michael Fuller will be identified by name; otherwise, they will be collectively referred to as Appellants.

[2]All references to section 11.02(a) or section 11.02(c) are references to the Medical Liability and Insurance Improvement Act of 1977. Act of June 16, 1977, 65th Leg., R.S., ch. 817, § 11.02, 1977 Tex. Gen. Laws 2039, 2052 (formerly Tex. Rev. Civ. Stat. Ann. art. 4590i). Article 4590i was repealed by Act of June 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. Although repealed, this statute was effective at all times relevant to this litigation.

[3]Before entering judgment, the trial court (1) reduced the jury award of medical expenses by $124,000.00 at Appellants' request, (2) applied a settlement credit of $2,300,000.00 resulting from Appellants' settlement with Covenant Health Systems, d/b/a Covenant Medical Center, (3) calculated prejudgment interest according to article 4590i, section 16.02(c), from the date of injury on October 29, 2002, until the day before judgment was signed on October 18, 2005, at 6.50% in accordance with sections 304.003 and 304.103 of the Texas Finance Code, and (4) offset prejudgment interest based on a written settlement offer in the amount of $200,000.00, made on February 21, 2005, pursuant to section 304.105(b) of the Texas Finance Code. References to the Texas Finance Code are to Tex. Fin. Code Ann. (West 2006).

where, on March 17, 2007, it was affirmed in part and reversed and remanded in part.[4] Consistent with the remittitur suggested in that opinion, on April 30, 2007, this Court issued its *Opinion on Order of Remittitur,* which reformed the 2005 judgment by reducing the recovery of Shane Fuller and Michael Fuller for future pecuniary losses and associated prejudgment interest.

Petition for review was granted by the Texas Supreme Court to consider the interrelationship between two provisions of the Medical Liability and Insurance Improvement Act of 1977. The first provision, section 11.02(a), capped the liability of a physician at a fixed amount, adjusted for inflation; whereas the second provision, section 11.02(c), created an exception to this cap when the physician's insurer negligently fails to settle within the meaning of the *Stowers Doctrine,*[5] that is, when the physician's insurer negligently fails to settle a claim within the limits of the physician's liability policy. Ultimately, the Supreme Court determined that both provisions could be given effect by conforming the judgment against the physician to section 11.02(a)'s cap and reserving for another case any suit against the insurer under section 11.02(c)'s *Stowers* exception.

---

[4]*Phillips v. Bramlett,* 258 S.W.3d 158 (Tex.App.--Amarillo 2007), *rev'd,* 288 S.W.3d 876, 882 (Tex. 2009) (Campbell, J., dissenting) (reversing and rendering a take-nothing judgment on the issue of gross negligence and exemplary damages, suggesting a remittitur of $220,000 as to both Shane Fuller and Michael Fuller on the issue of future pecuniary losses, and affirming the trial court's judgment in all other respects).

[5]*See generally, G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

Accordingly, on March 6, 2009, the Supreme Court reversed the judgment of this Court[6] and remanded the case to the trial court for entry of a judgment "consistent" with the Supreme Court's opinion.[7] All motions for rehearing were denied and the Texas Supreme Court issued its mandate on September 29, 2009.

After the Supreme Court issued its opinion, but prior to any action by the trial court, Appellants attempted to amend their petition to include claims against Appellee's insurance carrier, The Medical Protective Company of Fort Wayne, Indiana, Medical Protective Insurance Services, Inc., d/b/a The Medical Protective Company of Fort Wayne, Indiana (hereinafter "Med Pro"), and two adjusters, Dan Walston and Paul Rinaldi. Because Med Pro had previously filed a motion for rehearing before the Supreme Court,[8] Appellants contended that Med Pro was a party to this proceeding and they filed a motion requesting the trial court to compel Med Pro to appear and answer Appellants' allegations.

Both parties moved for judgment and without a new trial on the merits, a hearing on pending motions was held on November 19, 2009. On December 1, 2009, the trial court entered its second judgment (the "2009 judgment") in the sum of $1,717,649.61. In rendering that judgment, the trial court implicitly denied Appellants' attempt to add

---

[6]Although the Supreme Court's opinion "reversed" the judgment of this Court, it did not address issues previously determined by this Court pertaining to the issue of gross negligence, the remittitur of damages for future pecuniary losses, or the findings of the trial court incorporated in the original judgment.

[7]*Phillips v. Bramlett,* 288 S.W.3d 876, 883 (Tex. 2009).

[8]The Supreme Court ultimately treated this filing as an amicus brief.

4

additional parties, recalculated damages,[9] changed the rate and effective date for computing postjudgment interest, and omitted findings originally contained in the 2005 judgment. According to Appellants' allegations, in rendering judgment, the trial court disregarded a Rule 11 agreement between the parties entered into after the 2005 judgment pertaining to the effective date for the computation of postjudgment interest. Appellants' motion to modify, correct, or reform that judgment was subsequently overruled by operation of law and this appeal followed.

Appellants originally sought relief from the Supreme Court through a petition for writ of mandamus. The Supreme Court denied that relief without written opinion.[10] While awaiting disposition of their requested mandamus relief, Appellants timely perfected this appeal of the trial court's 2009 judgment. Contending this Court lacked jurisdiction, Appellee moved to dismiss the appeal. Originally, we denied Appellee's motion to dismiss without written opinion; however, upon consideration of Appellee's motion for rehearing, we reaffirmed our denial by written opinion.[11]

Ultimately, by one issue, stated in seven different subparts, Appellants contend the trial court erred by failing to recite in the 2009 judgment that (1) facts exist which would enable Appellants to assert a cause of action pursuant to the "*Stowers Doctrine*,"

---

[9]In recalculating damages, the trial court made legal and factual decisions pertaining to the applicable date for computation of the statutory cap, as well as the applicable consumer price index to be applied in calculating that cap.

[10]*See In re Dale Bramlett, Individually and as Independent Administrator of the Estate of Vicki Bramlett, Deceased, Shane Fuller and Michael Fuller,* No. 10-0025, (Tex. Feb. 5, 2010) (denied without written order) available at http://www.supreme.court.state.tx.us/opinions/casesearch.asp.

[11]*Bramlett v. Phillips,* 322 S.W.3d 443 (Tex.App.--Amarillo 2010, no pet.).

5

(2) the amount of damages that would have been awarded Appellants but for the section 11.02(a) damages cap, (3) the apportionment of rights between Appellants and Appellee in any subsequent prosecution of a *Stowers* claim; and the trial court erred by exceeding the Supreme Court Mandate by (4) changing the effective date for and rate of postjudgment interest, (5) vacating the original judgment, (6) removing recitations and other language from the original judgment, and (7) misspelling Shane Fuller's name.

### Opinions and Judgments and Mandates! Oh, my!<sup>12</sup>

An intermediate appellate court must hand down a written opinion that addresses every issue raised that is necessary to final disposition of an appeal. Tex. R. App. P. 47.1. Upon disposition of that appeal, the court of appeals must also enter a judgment that either: (a) affirms the trial court's judgment in whole or in part; (b) modifies the trial court's judgment and affirms it as modified; (c) reverses the trial court's judgment in whole or in part and renders the judgment that the trial court should have rendered; (d) reverses the trial court's judgment and remands the case for further proceedings; (e) vacates the trial court's judgment and dismisses the case; or, (f) dismisses the appeal. Tex. R. App. P. 43.2. Following entry of the appellate court's judgment and the expiration of appropriate time periods, the clerk of that court issues a mandate. Tex. R. App. P. 18.1(a), 51.1. The mandate is the appellate court's directive commanding the lower court to comply with the appellate court's judgment. *Tex. Parks & Wildlife Dep't v. Dearing,* 240 S.W.3d 330, 347 (Tex.App.--Austin 2007, pet. denied).

---

[12]"Lions and tigers and bears! Oh my!", Dorothy, *Wizard of Oz* (1939). Sometimes our imagination makes things seem more daunting than they really are.

6

Similarly, the Texas Supreme Court must hand down a written opinion in all cases in which it renders a judgment. Tex. R. App. P. 63. That judgment must either: (a) affirm the lower court's judgment in whole or in part; (b) modify the lower court's judgment and affirm it as modified; (c) reverse the lower court's judgment in whole or in part and render the judgment that the lower court should have rendered; (d) reverse the lower court's judgment and remand the case for further proceedings; (e) vacate the judgments of the lower courts and dismiss the case; or, (f) vacate the lower court's judgment and remand the case for proceedings in light of changes in the law. Tex. R. App. P. 60.2. Following entry of its judgment and expiration of appropriate time periods, the Clerk of the Supreme Court also issues a mandate. Tex. R. App. P. 18.1(b).

When an appellate court affirms a trial court's judgment or renders the judgment a trial court should have rendered, the judgment of the appellate court becomes the judgment of both courts, as to those issues. *Cook v. Cameron,* 733 S.W.2d 137, 139 (Tex. 1987) (op. on rehearing); *Dallas County v. Sweitzer,* 971 S.W.2d 629, 630 (Tex.App.--Dallas 1998, no pet.). When a lower court's judgment is reversed in whole, that judgment is a nullity, leaving the judgment as if it had never been rendered. *See Cessna Aircraft Co. v. Aircraft Network, LLC,* 345 S.W.3d 139, 145 (Tex.App.--Dallas 2011, no pet.); *In re S.S.G.,* 208 S.W.3d 1, 3 (Tex.App.--Amarillo 2006, pet. denied) (stating effect of reversal is to nullify the judgment); *Flowers v. Flowers,* 589 S.W.2d 746, 748 (Tex.App.--Dallas 1979, no writ) (holding reversal of a judgment completely nullifies it, leaving it as if it had never been rendered); *In re Jerry F.,* 294 S.W.3d 297, 298 (Tex.App.--Fort Worth 2009) (orig. proceeding) (stating once reversed, the trial

7

court's judgment is of no force and effect). However, when a judgment is reversed in part, as to those issues on which the judgment was not reversed, unless otherwise modified, the judgment remains in force and effect.

The scope of an appellate court's mandate is determined with reference to both the appellate court's opinion and the mandate itself. *Cessna Aircraft Co.,* 345 S.W.3d at 144 (citing *Truck Ins. Exchange v. Robertson*, 89 S.W.3d 261, 263 (Tex.App.--Fort Worth 2002, no pet.). Therefore, whether a judgment is reversed in whole or in part does not depend solely upon the wording of the mandate itself, but must instead be discerned by looking at both the opinion and the mandate to determine the full intent of the reviewing court. *Id.*

In this case, both the judgment and mandate of the Texas Supreme Court stated in pertinent part:

IT IS THEREFORE ORDERED, *in accordance with the Court's opinion*, that:

1) The court of appeals' judgment is *reversed*;

2) The cause is remanded to the trial court for further proceedings consistent with this Court's opinion; and

3) Benny P. Phillips, M.D., shall recover, and Dale Bramlett, Individually and as Independent Administrator of the Estate of Vicki Bramlett, Deceased, Shane Fuller, and Michael Fuller shall pay, the costs incurred in this Court and in the court of appeals.

(Emphasis added.)

Although the Supreme Court's judgment and mandate "reversed" the judgment of this Court, its opinion did not address every issue previously determined by this Court,

8

including issues pertaining to the recovery of exemplary damages, the remittitur suggested on the issue of Shane and Michael's future pecuniary losses, or the inclusion of findings made by the trial court in the original judgment. Because those issues were not addressed by the Supreme Court in its opinion, we construe that opinion, judgment and mandate as only reversing that part of our judgment dealing with the interrelationship between section 11.02(a) and section 11.02(c) of the Medical Liability and Insurance Improvement Act of 1977. Therefore, as to those issues not addressed by the Supreme Court, the opinions and judgments of this Court remain in force and effect. Similarly, as to those issues not addressed by either the Supreme Court or this Court, the 2005 judgment of the trial court remains in force and effect.

### Jurisdiction of Trial Court on Remand

When an appellate court remands a case with specific instructions, the trial court is limited to complying with the instructions and cannot re-litigate issues controverted at the former trial. *Denton County v. Tarrant County,* 139 S.W.3d 22, 23 (Tex.App.--Fort Worth 2004, pet. denied). We construe the mandate of the Supreme Court as vesting the trial court with the limited jurisdiction to determine the issue addressed in its opinion, to-wit: the interplay between "two provisions of the Medical Liability and Insurance Improvement Act of 1977, now repealed."[13] Therefore, to the extent that the judgment of the trial court exceeds that limited scope of authority, it was done so without jurisdictional authority.

---

[13]*Bramlett v. Phillips,* 288 S.W.3d 876, 877 (Tex. 2009).

Simply put, the Supreme Court found the trial court erred by failing to apply the statutory damages cap provided by section 11.02(a). The Supreme Court found the trial court's 2005 judgment, and the judgment of this Court, incorrectly assumed that the section 11.02(c) statutory *Stowers* exception waived the section 11.02(a) cap as to both the insurer and the insured, when, in fact, it only waived that cap as to the insurer. Because the cap was not waived as to the insured (Appellee), the trial court and this Court erred by not giving effect to that damages cap. Therefore, the **only** thing the trial court was authorized to do was to recalculate damages by applying the damages cap provided by section 11.02(a). To the extent the trial court did anything else, it exceeded its limited jurisdiction.

### The 2009 Judgment

The 2009 judgment of the trial court does five things: (1) it vacates the court's 2005 judgment; (2) it calculates the amount of recoverable damages based upon the jury's verdict; (3) it provides that "the unpaid part of this Judgment shall bear post judgment interest at Five Percent (5.0%) per year compounded annually"; (4) it specifically reserves any claim under former article 4590i, section 11.02(c) for another case; and (5) it provides that all relief not expressly granted is denied.

### 1. Vacation of the Trial Court's 2005 Judgment

Because that provision of the 2009 judgment vacating the 2005 judgment exceeds the limited scope of the trial court's jurisdictional authority, it was improper and is, hereby, vacated.[14]

### 2. Recalculation of Damages

Appellants contend the trial court erred in its recalculation of damages because it exceeded the mandate of the Supreme Court by "[c]hanging the rate of postjudgment interest and the date from which postjudgment interest accrues from that in the original judgment, despite not having been directed to do so." Because the trial court did not explain the mathematical process by which it calculated damages, it is impossible for this Court to determine (1) the date upon which the adjusted cap on damages was calculated, (2) the consumer price index used to adjust that cap, (3) the application of settlement credits due to the settlement of another defendant, or (4) the application of an offset of prejudgment interest pursuant to section 304.105(b) of the Texas Finance Code. While this Court is unable to determine the actual methodology used by the trial court in its recalculation of damages, what is clear is that the trial court did not make those recalculations based upon the date of the 2005 judgment. Furthermore, it is

---

[14]Justice Campbell's dissent accurately captures the essence of this issue wherein he discusses this Court's awareness of the impact this appeal could have on the anticipated *Stowers* action against Dr. Phillips's insurer. Where our opinions differ is in his conclusion that the majority implicitly finds the trial court erred in failing to include in its 2009 judgment the recitations included in its 2005 judgment. The majority opinion should not be read as making that finding. Indeed, reciting those findings in the 2009 judgment would have equally exceeded the limited scope of the trial court's jurisdictional authority. The import and effect of the recitations contained in the 2005 judgment is not a matter before the trial court or this Court at this time. That issue has neither been briefed nor argued by either party, and it should not be affected by inserting a finding in the 2009 judgment that those recitations are "vacated." That's another issue for another day.

11

patently clear from the face of the judgment that the trial court changed the rate of postjudgment interest. Because the trial court did not recalculate damages in accordance with the judgment of the Supreme Court, the trial court erred.

### 3. Postjudgment Interest

When a judgment is rendered by an appellate court or remanded for the limited purpose of entering a new judgment, the judgment creditor is entitled to postjudgment interest on the corrected judgment calculated from the date of the original erroneous judgment. *Thornal v. Cargill,* 587 S.W.2d 384, 385 (Tex. 1979); *D.C. Hall Transport, Inc. v. Hard,* 335 S.W.2d 257, 260 (Tex.Civ.App.--Fort Worth 1962, writ ref'd n.r.e.). Even though the 2009 judgment does not specify the date from which postjudgment interest should be calculated, it clearly does not provide for postjudgment interest on the corrected judgment from the date of the original 2005 judgment. Therefore, the trial court erred in failing to specify that postjudgment interest would accrue from the date of the 2005 judgment.

### 4. Reservation of Section 11.02(c) Claim For Another Case

The opinion of the Supreme Court made it clear that any *Stowers* claim would be the subject of subsequent litigation. Therefore, the trial court did not err in finding that any suit against Appellee's insurer under former article 4590i, section 11.02(c) is reserved for another case.

**5.      Relief Not Expressly Granted Is Denied**

Due to the limited jurisdiction of the trial court, the granting of additional relief would have exceeded the jurisdiction of the trial court.  Therefore, the trial court did not err in denying relief not expressly granted.

## Conclusion

Having found the trial court exceeded the limited jurisdiction granted by the mandate of the Supreme Court by vacating the 2005 judgment, and having found that the trial court erred in the recalculation of damages and the computation of postjudgment interest, Appellants' issue is sustained and the 2009 judgment is reversed.  Accordingly, this cause is remanded to the trial court for the recalculation of damages.  In calculating damages the trial court shall consider (1) the verdict of the jury, (2) Appellants' request to reduce the jury award of medical expenses by $124,000.00, (3) the judgment of this Court which reversed the award of exemplary damages, (3) this Court's *Order of Remittitur,* which reformed the 2005 judgment by reducing the recovery of Shane Fuller and Michael Fuller for future pecuniary losses, (4) the pretrial settlement of $2,300,000.00 received by Appellants from Covenant Health Systems d/b/a Covenant Medical Center, and (5) the judgment of the Supreme Court ordering the application of the statutory damages cap provided by section 11.02(a) as of October 18, 2005.  Furthermore, in entering its judgment the trial court shall (1) calculate prejudgment interest pursuant to sections 304.003 and 304.103 of the Texas Finance Code from the date of injury, October 29, 2002, until the day before the date the original

judgment was signed, October 17, 2005.[15] (2) offset prejudgment interest based upon the written settlement offer made February 21, 2005, (3) determine the applicable consumer price index and compute the adjusted section 11.02(a) damages cap as of October 18, 2005,[16] and (4) determine the applicable rate for postjudgment interest in accordance with section 304.003 of the Texas Finance Code, as of October 18, 2005.


                                          Patrick A. Pirtle
                                          Justice


Campbell, J., concurring and dissenting.

---

[15]The 2005 judgment found that Appellants were entitled to 1,048 days of prejudgment interest. The actual number of days between date of injury and the day before the judgment was signed is 1,084 days.

[16]The consumer price index is promulgated by the U.S. Department of Labor, Bureau of Labor Statistics. *See* http://www.bls.gov/ro3/fax_9160.htm (last visited December 22, 2011).