# IN THE SUPREME COURT OF TEXAS

══════════
No. 12-0257
══════════

BENNY P. PHILLIPS, M.D., PETITIONER,

v.

DALE BRAMLETT, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR OF THE
ESTATE OF VICKI BRAMLETT, DECEASED, SHANE FULLER AND MICHAEL FULLER,
RESPONDENTS

══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS
══════════════════════════════════════════════════════

**Argued February 6, 2013**

JUSTICE BOYD delivered the opinion of the Court.

When the life cycle of a judgment extends beyond an initial appeal, courts often face unique or unsettled jurisdictional and procedural issues. This case presents three of those issues; namely, (1) whether the court of appeals had jurisdiction to review the judgment that the trial court entered after this Court remanded the case to the trial court for entry of judgment; (2) whether postjudgment interest should be calculated from the date of the trial court's first judgment (the "original judgment") or the date of the judgment that the trial court entered following our remand (the "remand judgment"); and (3) whether the trial court erred by "vacating" the original judgment when it issued the remand judgment. We hold that (1) the court of appeals had jurisdiction to review the trial court's remand judgment; (2) postjudgment interest must be calculated from the date of the

original judgment; and (3) the trial court's order vacating the original judgment was unnecessary because that judgment had already been reversed in its entirety, but it was not reversible error. We affirm the court of appeals' judgment on these grounds and again remand the case to the trial court for entry of a final judgment consistent with this opinion.

## I. Background

This is our second time to hear this health care liability case. Because several prior opinions address the underlying facts,[1] we will describe only the procedural history that is relevant to the issues currently before us. In 2005, a Lubbock County trial court entered a judgment on a jury's verdict in favor of Respondents, the family of Vicki Bramlett (the Bramletts),[2] on their claims against Petitioner Benny P. Phillips, M.D. (Phillips). This original judgment awarded the Bramletts approximately $9 million in actual damages and $3 million in punitive damages. Former article 4590i,[3] which governs this case, capped the recoverable amount of actual damages, but the trial court concluded that a statutory exception to the cap—the *Stowers* exception—applied.[4] Apparently to support its application of the *Stowers* exception, the trial court made certain recitals in the original

---

[1] *See Phillips v. Bramlett*, 288 S.W.3d 876 (Tex. 2009); *Bramlett v. Phillips*, 359 S.W.3d 304 (Tex. App.—Amarillo 2012) (under review herein); *Bramlett v. Phillips*, 322 S.W.3d 443 (Tex. App.—Amarillo 2010); *Phillips v. Bramlett*, 258 S.W.3d 158 (Tex. App.—Amarillo 2007, no pet.) (per curiam), *rev'd* 288 S.W.3d 876 (2009).

[2] Respondents are Dale Bramlett, individually and as administrator of the estate of Vicki Bramlett, deceased, Shane Fuller, and Michael Fuller. Dale Bramlett is Vicki's surviving husband; Shane and Michael Fuller are her surviving sons.

[3] See Act of May 30, 1977, 65th Leg., R.S. ch. 817, § 11.02, 1977 Gen. Laws 2039, 2052 (former TEX. REV. CIV. STAT. art. 4590i, § 11.02), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (eff. Sept. 1, 2003) [herein, "article 4590i"].

[4] Section 11.02(c) of article 4590i provided that the damages cap in section 11.02(a) does "not limit the liability of any insurer where facts exist that would enable a party to invoke the common law theory of recovery commonly known in Texas as the 'Stowers Doctrine.'" Article 4590i, § 11.02(c).

2

judgment, including statements that Phillips was insured under a liability policy with limits of $200,000; that the Bramletts made, and Phillips did not timely accept, two "proper" *Stowers* demands to settle for the policy's limits; and that "facts exist to enable a party to invoke the common law theory of recovery known as the 'Stowers Doctrine.'"[5]

Phillips appealed. The Amarillo Court of Appeals reversed in part and modified and affirmed in part. First, the court found the evidence legally insufficient to support the jury's gross negligence finding, and thus reversed the part of the original judgment that awarded punitive damages and ordered that the Bramletts take nothing on that claim. The court next found the evidence sufficient to support the jury's remaining liability and damages findings, except as to certain future damages. The court suggested a remittitur on those future damages, which the Bramletts accepted. The court agreed with the trial court that the *Stowers* exception to article 4590i's damages cap applied, and therefore affirmed the actual damages portion of the trial court's original judgment, as modified to conform to the remittitur.

The Bramletts did not challenge the court of appeals' reversal of the punitive damages award. Phillips, however, petitioned for review of the court of appeals' judgment on actual damages, and we granted review on the issue of whether former article 4590i capped Phillips's liability. We held that it did, reversed the court of appeals' judgment, and remanded the case to the trial court for entry

---

[5] A party who seeks to hold a liability insurer liable for rejecting a settlement offer under the *Stowers* doctrine must prove, among other things, that an ordinarily prudent insurer would have accepted the offer, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *See Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994) (identifying elements of a *Stowers* claim). Here, the trial court did not make such a finding but instead stated that "[f]acts exist to enable a party to invoke the common law theory of recovery known as the 'Stowers Doctrine,'" which is the determination necessary to trigger the *Stowers* exception to article 4590i's damages cap. Although we discuss these recitals further below, we do not address whether they could support a subsequent *Stowers* claim against Phillips's insurer, as that issue is not before us in this case.

of a new judgment consistent with our opinion. 288 S.W.3d 876 (Tex. 2009). Because the Bramletts did not seek review of the court of appeals' take-nothing judgment on punitive damages, we did not address that claim. *Id.*

Back in the trial court on remand, both sides moved for entry of a new judgment. After a hearing at which the trial court admitted no new evidence, the trial court entered a new judgment (the remand judgment) that awarded the Bramletts actual damages capped under former article 4590i plus postjudgment interest calculated from the date of the remand judgment. In addition, the remand judgment expressly "vacated" the original judgment, did not include the *Stowers* recitals that were included in the original judgment, and stated that any suit against Phillips's insurer under former article 4590i was "reserved for another case."

In response to the remand judgment, the Bramletts filed a petition for writ of mandamus in this Court and separately appealed again to the Amarillo Court of Appeals. In both instances, the Bramletts argued that the trial court (1) should have calculated postjudgment interest from the date of the original judgment rather than the date of the remand judgment and (2) should not have vacated the original judgment. The Bramletts asserted that these actions conflicted with the mandate that we issued when we reversed the original judgment and remanded the case to the trial court.

We denied the Bramletts' mandamus petition without issuing an opinion. Meanwhile, Phillips moved to dismiss the Bramletts' appeal, contending that the court of appeals lacked jurisdiction because this Court had exclusive jurisdiction to enforce its mandate. The court of appeals held that it had jurisdiction and denied the motion to dismiss. 322 S.W.3d 443, 444. The court then held that the trial court had erred by vacating its original judgment and by calculating

4

postjudgment interest from the date of the remand judgment rather than the date of the original judgment. 359 S.W.3d 304, 312. The court of appeals thus reversed the remand judgment and again remanded the case to the trial court. *Id.* at 313.

We granted Phillips's petition for review. Phillips contends that the court of appeals (1) lacked jurisdiction to review the trial court's remand judgment, (2) erred in holding that the trial court erred by calculating postjudgment interest from the date of the remand judgment, and (3) erred in holding that the trial court erred by vacating its original judgment.

## II. Jurisdiction Following Remand

Phillips argues that this Court has "exclusive jurisdiction to enforce [its] mandate and opinion," and the court of appeals therefore lacked jurisdiction over the Bramletts' appeal from the remand judgment. The court of appeals disagreed, and held that the trial court exceeded its jurisdiction by taking actions outside the scope of our mandate and judgment—specifically, by vacating its original judgment. We therefore begin by discussing the trial court's and the court of appeals' jurisdiction over a case that we have remanded to the trial court.

### A. The Trial Court's Jurisdiction on Remand

The court of appeals held that the trial court exceeded its jurisdiction on remand by acting beyond the scope of its authority under our mandate and judgment. While we agree that our mandate and judgment limited the trial court's authority on remand, such limits are not "jurisdictional" in the true sense of that word.

When an appellate court reverses a lower court's judgment and remands the case to the trial court, as we did here, the trial court is authorized to take all actions that are necessary to give full

5

effect to the appellate court's judgment and mandate. *See In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) (per curiam) (holding trial court erred on remand by failing to reduce punitive damages award to conform to this Court's reduction of actual damages, as dictated by statutory cap on punitive damages). But the trial court has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate. *See, e.g.*, *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue.").

Parties and courts sometimes use the term "jurisdiction" to refer to the trial court's authority on remand, as the court of appeals did here. *See Bramlett*, 359 S.W.3d at 311–12. In doing so, however, they are not referring to the trial court's constitutional or statutory power to conduct the necessary proceedings or to enter a judgment, but are instead referring to the scope of the trial court's authority in exercising that power. *See generally State v. Holloway*, 360 S.W.3d 480, 484–85 (Tex. Crim. App. 2012) (distinguishing court's jurisdiction to hear a case from its authority to act under that jurisdiction). The appellate court's mandate and judgment do not limit the trial court's jurisdiction to preside over the case and enter a remand judgment, but instead limit the trial court's authority in exercising that jurisdiction.

This is why we have reversed, rather than vacated, remand judgments that failed to comport with an appellate court's mandate. *See Wall v. Wall*, 186 S.W.2d 57 (Tex. 1945) (reversing trial court's remand judgment and remanding case to trial court for entry of new judgment complying with appellate court's prior instruction); *see also Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34

6

S.W.3d 909, 912 (Tex. 2000) (per curiam) (reversing and remanding to court of appeals that awarded costs in appeal after remand with language that could be interpreted to contradict this Court's judgment in first appeal). We reversed, rather than vacated, these remand judgments because, although the trial courts exceeded their authority on remand, they had jurisdiction to enter the remand judgment, even if it exceeded their authority and was thus erroneous.

Here, the trial court had jurisdiction to enter a judgment upon remand. Although our judgment and mandate limited the trial court's authority in exercising its jurisdiction, we do not agree with the court of appeals that, to the extent the trial court exceeded its authority, it acted "beyond its jurisdiction." Rather, to the extent the trial court's judgment exceeds the requirements of our judgment and mandate, we will reverse the judgment for error rather than vacate it for lack of jurisdiction. *See Wall*, 186 S.W.2d at 59.

## B. The Court of Appeals' Jurisdiction on Remand

Phillips's challenge to the court of appeals' ability to review the remand judgment does raise a jurisdictional question. Phillips contends that we have exclusive jurisdiction over a case that we have remanded, and therefore the court of appeals had no power even to consider an appeal from the remand judgment. We disagree.

As a general matter, our statutes and rules confirm that courts of appeals have jurisdiction to review the final judgments of trial courts within their districts. *See* TEX. GOV'T CODE § 22.220(a) ("Each court of appeals has appellate jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction when the amount in controversy or the judgment rendered exceeds $250, exclusive of interest and costs."); TEX. R. APP. P. 25.1(b) ("The filing of a

notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). Phillips contends that this general jurisdiction does not exist after this Court remands a case to the trial court because this Court has exclusive jurisdiction to enforce its mandates and judgments. The cases on which Phillips relies do not support his contention. *See Wells v. Littlefield*, 62 Tex. 28 (1884); *Conley v. Anderson*, 164 S.W. 985 (Tex. 1913); *Dallas/Fort Worth Int'l Airport Bd. v. City of Irving II*, 868 S.W.2d 750 (Tex. 1993) (per curiam); *Bilbo Freight Lines, Inc. v. State*, 645 S.W.2d 925 (Tex. App.—Austin 1983, writ dism'd w.o.j., writ ref'd n.r.e.).

In *Wells*, we observed the now well-established principle that this Court has jurisdiction to enforce its judgments and mandates, regardless of whether we render judgment or remand to the trial court for entry of judgment in accordance with our instructions. 62 Tex. at 30. But we did not say that our jurisdiction is exclusive, and in fact we made no mention of exclusivity. *See id.*

In *City of Irving*, we held that when we remanded the case to the trial court, the *trial court's* jurisdiction over the case was exclusive with respect to *other trial courts*, and another trial court with a related case could not enjoin prosecution of the remanded case. 868 S.W.2d at 750. We explained that, "[o]nce this court has remanded a cause to a lower court, it has exclusive jurisdiction over the remanded proceedings, and will permit no interference from any other court." *Id.* at 751. Although Phillips contends that the "it" in this statement refers to this Court, the context confirms that it refers instead to the trial court. We did not hold that this Court's jurisdiction was exclusive or that courts of appeals lack jurisdiction to review a judgment that a trial court enters after remand. *See id.*

8

In *Conley*, we held that this Court has exclusive jurisdiction to interpret and enforce judgments that we render on appeal, not judgments that a trial court enters after we remand the case. 164 S.W. at 986. We stated that "[t]his court, having upon writ of error reversed the judgment of the district court in the former suit, and having entered final judgment in that case, no district court had jurisdiction to review that judgment, nor to interpret and enforce it, but must observe it as it was framed by this court." *Id.*

Finally, *Bilbo Freight Lines* provides no support for Phillips's position, for several reasons. In that case, the Austin Court of Appeals dismissed an appeal because the entity that filed the appeal, Bilbo Freight, was not a party to the suit below and had failed to establish standing to appeal. 645 S.W.2d at 927. After concluding that Bilbo Freight lacked standing to appeal, the court of appeals stated in dicta that it could not consider Bilbo Freight's contention that the trial court erred in construing this Court's mandate because "[t]he interpretation of the Supreme Court's judgment and mandate lies *exclusively* with that Court."[6] *Id.* (citing *Wells* and *Conley*).

As an initial matter, *Bilbo Freight Lines*, like *Conley*, involved the interpretation and enforcement of a final judgment that this Court rendered—not a judgment that the trial court rendered on remand. Seventeen years after this Court modified and affirmed the judgment of the trial court and court of appeals, the State moved in the trial court for injunctive relief that it had

---

[6] This analysis is dicta, and not an alternative basis for the court of appeals' holding, because the court of appeals had determined that, due to Bilbo Freight's lack of standing, no appeal was properly before the court. *Bilbo Freight Lines*, 645 S.W.2d at 927. If a proper party to the case had appealed, that party could have challenged the trial court's jurisdiction to enter the new judgment, and the court of appeals would have had jurisdiction to consider whether the trial court's judgment was void for lack of jurisdiction. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995) (per curiam).

9

sought but not obtained in the original judgment. *Id.* at 926. Despite our final judgment in the case, the trial court purported to grant an additional judgment, and none of the parties to the judgment appealed or otherwise attacked the new judgment. *Id.* Only Bilbo Freight, which was not a party and did not establish privity of estate or interest with any party, challenged the trial court's action. *See id.*

We have held under similar circumstances that a trial court lacked jurisdiction to hear a non-party's motion for relief from a final judgment after the expiration of the trial court's plenary power, and consequently the court of appeals lacked jurisdiction to review the merits of the trial court's decision on such a motion. *Times Herald Printing Co. v. Jones*, 730 S.W.2d 648, 649 (Tex. 1987) (per curiam) (vacating court of appeals' judgment and dismissing cause). *Bilbo Freight Lines* provides no guidance in this case, because this case does not involve an appeal by a nonparty who lacked standing to initiate the appeal; nor does it involve a trial court's action long after the expiration of plenary power.

Moreover, the Austin Court of Appeals has since limited its dicta in *Bilbo Freight Lines*. *See Tex. Health & Human Servs. Comm'n v. El Paso Cnty. Hosp. Dist.*, 351 S.W.3d 460, 475–77 (Tex. App.—Austin 2011), *aff'd by* No. 11-0830, 2013 WL 2150666 (Tex. May 17, 2013). In *El Paso County Hospital*, the hospitals moved to dismiss the Health and Human Services Commission's appeal from a remand judgment, relying on *Bilbo Freight Lines* for the proposition that this Court had exclusive jurisdiction to review the trial court's remand judgment. *Id.* at 475–76. The Austin Court of Appeals disagreed, recognizing that our more recent decisions foreclosed any such argument:

10

> To the extent that the Hospitals are suggesting that lower courts literally have no jurisdiction to interpret an appellate court's judgment or mandate, even if only to determine their meaning in order to comply, that notion is belied by more recent Texas Supreme Court decisions. The core notion underlying decisions like *Conley*, as we have more recently observed, is simply that a higher court's mandate imposes a mandatory, ministerial duty on the lower court to comply with the higher court's judgment. It is in this respect that the lower court has no "jurisdiction" or "discretion" in regard to "reviewing" or "interpreting" the mandate.

*Id.* at 476 (citations omitted). The court also pointed out that both *Bilbo Freight Lines* and *Conley* involved appeals following this Court's entry of a final judgment, rather than a trial court's remand judgment. *Id.* at 477. The hospitals did not challenge these holdings on petition for review, and we affirmed the Austin Court of Appeals' judgment. 2013 WL 2150666, at *9.

The cases that Phillips cites do not support his contention that the court of appeals lacked jurisdiction over the Bramletts' appeal from the trial court's remand judgment, and we have found no case in which this Court has preempted the courts of appeals' jurisdiction following a remand to the trial court for entry of judgment. We thus hold that a court of appeals has jurisdiction, consistent with section 22.220(a) of the Texas Government Code, to review a trial court's final judgment after remand from this Court. And we in turn have jurisdiction, consistent with section 22.001(a) of the Government Code, to review the court of appeals' judgment. To be sure, we also retain jurisdiction to enforce our judgments and mandates and are authorized to exercise our writ power to do so, *see In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d at 247–48, but our enforcement jurisdiction does not deprive the courts of appeals of jurisdiction to review a trial court's remand judgment. We conclude that the court of appeals had jurisdiction over this appeal from the trial court's remand judgment.

11

## II. The Trial Court's Remand Judgment

We now turn to the issue of whether the trial court or the court of appeals erred in the exercise of their jurisdiction. Phillips contends that the trial court got it right by calculating postjudgment interest based on the date of the remand judgment rather than the date of the original judgment, by vacating its original judgment, and by declining to include the *Stowers* recitals in its remand judgment. The Bramletts contend that the court of appeals got it right by holding that postjudgment interest must be calculated based on the date of the original judgment and that the trial court lacked authority to vacate its original judgment containing the *Stowers* recitals.

The parties agree, as do we, that the first appeal resulted in a complete reversal of the trial court's original judgment. The court of appeals reversed the original judgment with respect to punitive damages, rendered a take-nothing judgment on punitive damages, and affirmed the remainder of the trial court's judgment as modified to conform to the remittitur. 258 S.W.3d at 182–83. On review, this Court held that the trial court and the court of appeals erred in failing to cap the actual damages award, reversed the court of appeals' judgment, and remanded the case to the trial court for entry of a new judgment consistent with our opinion. 288 S.W.3d at 882–83. Our opinion did not expressly state that we were not reversing the unchallenged portion of the court of appeals' judgment that reversed the award of punitive damages, but the parties do not contend otherwise. Our opinion addressed only the award of actual damages, and the trial court and the parties correctly understood the opinion as approving the court of appeals' unchallenged holding on punitive damages. By remanding the case to the trial court for entry of a judgment consistent with our

12

opinion, we permitted the trial court to enter a final judgment that reflected this Court's holdings and the court of appeals' holding on punitive damages.

The parties disagree, however, on whether, on remand, the trial court should have entered a judgment modifying its original judgment or entered a completely new one. As a practical matter, this is a distinction without meaning, at least in this case. A judgment that has been wholly reversed (as the trial court's original judgment was) is without effect, and whether the trial court's remand judgment is labeled as a "new" or a "modified" version of the earlier judgment does not alter the correctness of its content.[7] *See Coats v. Blanding*, 59 Tex. Civ. App. 334, 336, 125 S.W. 627, 628 (1910, writ ref'd) ("It is a well-settled rule that a vacated, set aside, or reversed judgment, order, or declaration is deprived of its conclusive character as such, and cannot be made the basis of any rights thereafter."); *cf. Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 174 & n.39 (Tex. 2009) (remanding cause to trial court for entry of "new judgment" consistent with appellate opinion and instructing trial court to consider whether to award attorney's fees in its "modified judgment"). Thus, we turn to the substantive issues: whether the trial court should have calculated postjudgment interest based on the date of the original judgment or the remand judgment and whether the trial court should have vacated the original judgment or included the *Stowers* findings in the remand judgment.

---

[7] The Bramletts argue that our opinion directed the trial court to "conform" its existing judgment to our opinion, not enter a new judgment. But this language in our opinion relates to how trial courts should apply section 11.02 of former article 4590i in the first instance: "both the statutory cap and its exception can be applied as written by conforming the judgment against the physician to section 11.02(a)'s cap and reserving for another case any suit against the insurer under section 11.02(c)'s Stowers exception." *Id.* at 882. By contrast, our instruction to the trial court for remand was that it should "apply the cap and *render* judgment consistent with our opinion." *Id.* at 883.

### A. Postjudgment Interest

Prejudgment interest and postjudgment interest compensate judgment creditors for their lost use of the money due to them as damages. *See Miga v. Jensen*, 96 S.W.3d 207, 212 (Tex. 2002) ("[L]ike pre-judgment interest, post-judgment interest is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial."); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) ("Prejudgment interest is 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of the judgment.") (citation omitted). Prejudgment interest performs this function for the time period from the date the damages are incurred through the date of judgment; postjudgment interest, from the date of judgment through the date the judgment is satisfied. *See Miga*, 96 S.W.3d at 212; *Kenneco Energy*, 962 S.W.2d at 528. Generally, the interest rate is the same for prejudgment and postjudgment interest. *See* TEX. FIN. CODE § 304.103 ("The prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment."); *Kenneco Energy*, 962 S.W.2d at 532 (conforming rate and accrual of prejudgment interest under common law to that awarded under Finance Code, including accrual of "prejudgment interest . . . at the rate for postjudgment interest"). Thus, the date on which prejudgment interest ceases and postjudgment interest commences is often inconsequential.

Here, however, we have held that the Bramletts' damages are capped under former article 4590i. 288 S.W.3d at 882. Previously, we have held that prejudgment interest is included among the damages that are capped by former article 4590i. *See Columbia Hosp. Corp. of Houston v. Moore*, 92 S.W.3d 470, 474 (Tex. 2002); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887,

14

897–901 (Tex. 2000). We have never held that postjudgment interest is subject to the damages cap. Thus, the parties' dispute over which judgment date ends prejudgment interest and begins postjudgment interest is not merely academic in this case; it dictates whether the Bramletts may be able to recover interest for the four-year period between the trial court's original judgment in 2005 and its remand judgment in 2009. With these pragmatic concerns in mind, we turn to the procedural issue before us.

The Legislature has instructed that any "money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment," TEX. FIN. CODE § 304.001, and that, with one exception, the postjudgment interest accrues beginning on the date the judgment is rendered:

> (a) Except as provided by Subsection (b), postjudgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied.
>
> (b) If a case is appealed and a motion for extension of time to file a brief is granted for a party who was a claimant at trial, interest does not accrue for the period of extension.

*Id.* § 304.005.

The Finance Code does not define the term "judgment" or otherwise distinguish between a trial court's original judgment and judgments on remand or appeal. The issue here is whether, when a trial court enters a second judgment following remand, the "date the judgment is rendered" is the date of the remand judgment (as Phillips contends) or of the original judgment (as the Bramletts contend). We hold that, when an appellate court remands a case to the trial court for entry of judgment consistent with the appellate court's opinion, and the trial court is not required to admit new or additional evidence to enter that judgment, as is the case here, the date the trial court entered

15

the original judgment is the "date the judgment is rendered," and postjudgment interest begins to accrue and is calculated as of that date.

Construing the predecessor to section 304.005, we have repeatedly held that, when an appellate court reverses a trial court's judgment and renders judgment on appeal, postjudgment interest begins to run from the date of the trial court's judgment, not the later date of the appellate court's judgment. In *American Paper Stock Co. v. Howard*, the trial court entered a judgment for the defendant notwithstanding the jury's verdict for the plaintiff, and the court of appeals reversed and rendered judgment for the plaintiff on the jury's verdict, but calculated postjudgment interest from the date of the jury verdict instead of the date of the trial court's or appellate court's judgment. 528 S.W.2d 576, 576–77 (Tex. 1975) (per curiam). We reformed the court of appeals' judgment, holding that the "judgment" that the statute refers to "is the judgment of the trial court," and when that judgment is "erroneous," the appellate court's judgment "must take its place and [the] plaintiff is entitled to interest from the date of the erroneous judgment." *Id.* at 577.

We reaffirmed this holding in *Thornal v. Cargill, Inc.*, when we reformed a court of appeals' judgment to provide for postjudgment interest from the date of the trial court's original judgment, after the court of appeals had reversed and rendered judgment but failed to include an award of postjudgment interest. 587 S.W.2d 384, 384–85 (Tex. 1979) (per curiam). Citing *American Paper Stock*, we explained again that, "when the trial court's judgment is erroneous, the judgment of the court of civil appeals must take its place and [the] plaintiff is entitled to interest from the date of the erroneous judgment." *Id.* at 385. Finally, in *Danziger v. San Jacinto Savings Association*, we applied this same holding when we reversed a court of appeals' judgment and remanded in part and

rendered in part. As to the part that we rendered, we awarded "post-judgment interest to accrue . . . from . . . the date of the trial court's [original] judgment." 732 S.W.2d 300, 305 (Tex. 1987).

Phillips acknowledges these decisions, but argues that a different rule should apply when an appellate court remands the case to the trial court rather than renders judgment on appeal. When an appellate court remands a case, Phillips contends, the trial court's original judgment becomes a "nullity," as if it never existed, and the remand judgment becomes the court's "operative" judgment under the postjudgment interest statute. The logic of Phillips's distinction between render and remand fails. When we have reversed a trial court's original judgment, that judgment is ineffective and unenforceable; this is no more or less true whether we then render judgment ourselves or remand the case to the trial court to render judgment in accordance with our opinion. It is the reversing of the judgment, rather than the rendering of a new judgment or the remanding of the case, that makes the original judgment ineffective. Thus, Phillips's reliance on the ineffectiveness of the trial court's original, reversed judgment is not a basis for distinguishing between render and remand.

Instead, we are guided by *D.C. Hall Transport, Inc. v. Hard*, 358 S.W.2d 117 (Tex. 1962) (per curiam). In that case, the jury rendered a verdict for the plaintiff but the trial court granted the defendants' motion for judgment notwithstanding the verdict; the court of appeals reversed, and rendered judgment for the plaintiff. *Hard v. Hall*, 318 S.W.2d 108 (Tex. Civ. App.—Fort Worth 1958), *rev'd Hall v. Hard*, 335 S.W.2d 584 (Tex. 1960). We in turn reversed the court of appeals' judgment and remanded the case to the trial court "for further proceedings in accordance with this opinion," instructing the trial court to "proceed with the disposition of the cause . . . as though no judgment non obstante veredicto had been entered." *Hall*, 335 S.W.2d at 591. On remand, the trial

17

court heard arguments but "[n]o evidence was offered by either party." *D.C. Hall Transp., Inc. v. Hard*, 355 S.W.2d 257, 258 (Tex. Civ. App.—Fort Worth 1962), writ ref'd n.r.e., 358 S.W.2d 117, 117 (Tex. 1962) (per curiam). The trial court then entered a remand judgment for the plaintiff, with postjudgment interest from the date of the original judgment notwithstanding the verdict. *Id.* In the second appeal, the defendant argued that the trial court erred by calculating postjudgment interest from the date of the original judgment. *Id.* at 260. The court of appeals affirmed, noting that "the Supreme Court did not remand for a new trial. The case was remanded with directions to the trial court to make certain findings, on the evidence adduced at the original trial, and enter judgment in accordance with such findings." *Id.* "In effect," the court of appeals reasoned, "the [remand] judgment was the judgment which should have been rendered . . . when the [original] non obstante judgment was rendered. Since the judgment non obstante was erroneous, and the [remand] judgment took its place, plaintiff was entitled to interest from the date of the erroneous judgment." *Id.* In refusing review, we confirmed that "[w]e are . . . in agreement with and accordingly approve the decisions of law announced by the Court of Civil Appeals in its opinion." 358 S.W.2d 117, 117 (Tex. 1962).

Similarly, in *Vassallo v. Nederl-Amerik Stoomv Maats Holland*, we reversed a trial court's take-nothing judgment against a plaintiff and remanded the case to the trial court with instructions to enter a judgment for the plaintiff in accordance with our opinion. 344 S.W.2d 421, 426 (Tex. 1961). The trial court entered a remand judgment for the plaintiff with postjudgment interest from the date of the original judgment, and the court of appeals affirmed, holding that the trial court correctly calculated postjudgment interest because this Court's judgment remanding the cause with

instructions to enter judgment for plaintiffs in accordance with its opinion "was an instruction to enter the judgment which the trial court should have entered" when it entered its original judgment. *Nederlandsch-Amerikaansche-Stoomvaart-Maatschappij; Holland-Am. Line v. Vassallo*, 365 S.W.2d 650, 656 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.).

Phillips asserts that *D.C. Hall* "is not persuasive authority" because, unlike this case, *D.C. Hall* involved a judgment notwithstanding the verdict. But Phillips does not explain why the presence or absence of a J.N.O.V. should be a determinative factor. In both this case and *D.C. Hall*, the trial court could have entered a correct judgment based on the jury's verdict, but did not, and in both cases we remanded the case to the trial court for entry of the correct judgment based on the existing jury verdict and governing law. We agree with the holdings in *D.C. Hall* and *Vassallo*.

As a matter of statutory construction, additional reasons support our conclusion. First, this Court "presume[s] the Legislature is aware of relevant case law when it enacts or modifies statutes." *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012); *see also Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.") (citation omitted). We therefore presume that when the Legislature enacted section 304.005 in 1999, it was aware of our interpretations of the word "judgment" in the predecessor statute to mean the trial court's original judgment when a court of appeals either entered the judgment that the trial court should have entered or remanded to the trial court for entry of the judgment the trial court should have entered. *See id.* Nothing in section 304.005 or the Finance Code indicates that the Legislature intended a different meaning for the term "judgment" as used in the statute. *See* TEX. FIN. CODE § 304.001–.302. We therefore must conclude

19

that the Legislature selected the term "judgment" for the purpose of conveying a meaning consistent with that which we historically afforded to it. *See In re Allen*, 366 S.W.3d at 706 ("Language in a statute is presumed to have been selected and used with care, and every word or phrase in a statute is presumed to have been intentionally used with a meaning and a purpose.") (quoting *State v. K.E.W.*, 315 S.W.3d 16, 21 (Tex. 2010)).

Second, subsection (b) of section 304.005 evidences an expectation that postjudgment interest will accrue during the pendency of an appeal, subject to subsection (b)'s exclusion. *See* TEX. FIN. CODE § 304.005(b) (excluding period of claimant's extensions of time to file brief from postjudgment interest calculation). In providing for postjudgment interest "on a money judgment of a court in this state," the Legislature did not distinguish between a judgment rendered by an appellate court and a judgment rendered by a trial court on remand as directed by the appellate court. *See id.* § 304.005(a), (b). We see no basis for applying that subsection differently depending solely on whether an appellate court renders judgment directly or remands for entry of judgment consistent with the opinion on appeal.

Finally, our rules of procedure expressly authorize this Court to remand a case to the trial court in the interest of justice "even if a rendition of judgment is otherwise appropriate." TEX. R. APP. P. 60.3. Our decision to remand rather than render is a procedural decision, often based on practical considerations, the purpose of which generally is not to alter a party's substantive right of recovery. It should not be the basis for altering whether a party is entitled to postjudgment interest during the pendency of the appeal.

However, we are not holding today that postjudgment interest *always* accrues from the date of the original judgment when an appellate court remands a case to the trial court, although some of our courts of appeals have suggested that this is the case even when the trial court is required to admit additional evidence on remand. In *State Department of Highways & Public Transportation v. City of Timpson*, for example, the plaintiff sued both the City and the State, but when the plaintiff settled with the City, the trial court dismissed the City and entered judgment against the State based on the jury's verdict. 795 S.W.2d 24 (Tex. App.—Tyler 1990, writ denied). The court of appeals reversed the judgment in part and remanded the case "for trial only of the issues of the comparative negligence of the State and the City." *Id.* at 25. After this new trial, the trial court entered a new judgment reducing the amount of the award by the City's percentage of responsibility, and the plaintiff appealed, "complaining that the trial court erred in failing to award post-judgment interest from the date of the original judgment." *Id.* at 27. The court of appeals agreed, reasoning that, because it had remanded the case "with instructions to the trial court to determine the single issue" of comparative negligence, "[i]nterest on the revised judgment should run from the date of the original or erroneous judgment." *Id.* Similarly, in *Gamma Group v. Transatlantic Reinsurance Co.*, the court of appeals held that postjudgment interest should run from the date of the original judgment even when the trial court conducted an evidentiary hearing on remand, at which the plaintiffs offered additional evidence of damages, leading to a remand judgment that awarded plaintiffs nearly twice the amount of damages awarded in the original judgment. 365 S.W.3d 469, 471, 476 (Tex. App.—Dallas 2012, no pet.).

21

Relying on *City of Timpson*, the Tyler Court of Appeals recently held that "the general rule is that after examining the entire procedural history of a dispute, a party that *ultimately* prevails is entitled to postjudgment interest from the date the original judgment was rendered, irrespective of whether the original judgment was erroneous, because that is the date upon which the trial court should have rendered a correct judgment." *Long v. Castle Tex. Prod. Ltd. P'ship*, 330 S.W.3d 749, 753 (Tex. App.—Tyler 2010, pet. granted and abated). In the Tyler Court's view, postjudgment interest runs from the date of the original judgment any time a court of appeals remands the case to the trial court, and "[w]hether the remand . . . created a fact issue or required a limited retrial was immaterial to the accrual of postjudgment interest." *Id*. We granted a petition for review in *Long*, but have since abated the case pending bankruptcy proceedings. *See Long v. Castle Tex. Prod. Ltd. P'ship*, 55 Tex. Sup. Ct. J. 1170 (Aug. 17, 2012).

For purposes of the present case, we need not (and do not) decide whether postjudgment interest runs from the date of the original judgment in every remanded case, or particularly in cases in which the trial court is required to conduct a new trial or other evidentiary proceeding before entering the remand judgment. Here, we remanded the case for the trial court to enter judgment in accordance with our opinion, and the trial court was not required to admit or consider any additional evidence before entering its remand judgment.

Because we remanded the case for entry of judgment consistent with our opinion, and the trial court was not required to admit new or additional evidence to enter that judgment, the date the trial court entered the original judgment is the "date the judgment is rendered," and postjudgment interest began to accrue and must be calculated as of that date.

22

## B. Recitals in the Judgment

Finally, we address the Bramletts' arguments that the trial court should not have vacated its original judgment and that it should have included the *Stowers* recitals in its remand judgment. Regardless of the correctness of the trial court's *Stowers*-related determinations, the Bramletts have not explained and we do not see what continuing effect the trial court's recitals could have now. They are recitals and not part of the judgment's decretal language. They are not material to the ultimate disposition of the case, and they do not represent jury findings.

We do not agree with the court of appeals that the trial court "exceeded its jurisdiction" by vacating the original judgment, because, as we have explained, the trial court had "jurisdiction" on remand even to enter an erroneous judgment. The issue is whether the trial court exceeded its authority in light of our mandate, not whether it acted without jurisdiction. But by the time we remanded the case to the trial court, we had reversed the original judgment in its entirety. Although we can agree that the trial court erred in "vacating" a judgment that no longer had any effect, any such error was harmless. *See* TEX. R. APP. P. 44.1(a), 61.1; *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011) (per curiam).

This leaves us with the question of whether, as the Bramletts contend, the trial court should have included the *Stowers* recitals in the remand judgment. To the extent that the Bramletts believe that such findings were necessary to support application of the *Stowers* exception to article 4590i's cap on actual damages, we had already resolved that issue in our prior opinion, thus making any such findings moot on remand. And to the extent that the Bramletts believe that the recitals are somehow relevant or necessary to their subsequent *Stowers* claim against Phillips's liability insurer, they have

23

failed to explain to us how that could be or why they would be entitled to obtain such recitals in a case to which Phillips's liability insurer was not a party. We therefore hold that the trial court did not err in declining to include the *Stowers* recitals in the remand judgment.

## III. Conclusion

We agree with the court of appeals that it had jurisdiction over this appeal and that the trial court erred in calculating postjudgment interest based on the date of the remand judgment rather than the date of the original judgment. We disagree with the court of appeals that the trial court exceeded its jurisdiction by vacating the original judgment. Though it was unnecessary for the trial court to vacate its original judgment, which had been reversed in its entirety, the trial court did not lack jurisdiction to enter judgment—even an erroneous judgment—in the case. The court of appeals' holding on this issue, however, is not reflected in its judgment, which reverses the trial court's order and remands the cause to the trial court for recalculation of damages without reference to vacatur. We therefore affirm the court of appeals' judgment reversing and remanding this case, and instruct the trial court on remand to modify its judgment to award postjudgment interest from the date of its original judgment in accordance with the applicable provisions of the Finance Code, consistent with this opinion.

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** June 7, 2013

24